UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDY GERNHARDT and
TERRY GERNHARDT,

        Plaintiffs,                        CASE NO. 03-73917

-vs-                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

WINNEBAGO INDUSTRIES,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is Defendant's Motion for Summary Judgment.

**BACKGROUND:**

This case involves a 1999 Winnebago "Ultimate Freedom" motor home (hereinafter "Winnebago").

Presently before the Court is Defendant's Motion for Summary Judgment (Docket Entry 29).

On May 1, 1999, Terry and Sandy Gernhardt (collectively "Plaintiffs") purchased the Winnebago from Meyers Campers, Inc in Caledonia, New York. Plaintiffs received Winnebago's 1999 New Vehicle Limited Warranty ("Limited Warranty") in conjunction with the purchase. The Limited Warranty provides, in pertinent part:

> The basic Warranty Period is 12 months or 15,000 miles (24,135 kilometers), on the odometer, whichever occurs first. Winnebago does not authorize any person to create for it any other obligations or liability in connection with this vehicle. ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS VEHICLE IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY AS HEREINBEFORE OR HEREINAFTER PROVIDED. THE PERFORMANCE OF

1

REPAIRS IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN WARRANTY.

(Defendant's Motion to Dismiss and for a More Definite Statement, Ex. 2) (emphasis in original).

Shortly after taking possession of the Winnebago, Plaintiffs began to experience numerous problems with the vehicle, including defects in its components. (Complaint, Defendant's Motion to Dismiss, Ex. 1, ¶6). Plaintiffs contend that Winnebago was offered numerous attempts to cure these defects, but failed to do so. Plaintiffs sold the motor home through Meyer's in March, 2005. (Defendant's Motion for Summary Judgment).

On August 13, 2003, Plaintiffs filed the present action in Oakland County Circuit Court. Due to the federal claims contained therein, on September 30, 2003, Defendant removed the action to this Court. Plaintiffs' Complaint alleged the following counts:

Count I: Breach of Express and Implied Warranties Under Michigan's Uniform Commercial Code ("UCC"), M.C.L. §440.2314

Count II: Revocation of Acceptance, M.C.L. §440.2608

Count III: Breach of the Obligation of Good Faith, M.C.L. §440.1203

Count IV: Liability Under Magnuson-Moss Warranty Act, 15 U.S.C. §2301

Count V: Violation of Michigan Consumer Protection Act, M.C.L. §445.901

(Complaint, Defendant's Motion, Ex. 1).

On October 15, 2003, Defendant filed a motion seeking to dismiss Counts I-V of the Complaint or, in the alternative, for a more definite statement of Count V. On November 14, 2003, Plaintiffs filed their Answer in Opposition. Defendant filed a Reply, which was stricken by the Court because it exceeded the five-page limit of Local Rule 7.1.

On December 30, 2003, the Court entered an opinion and order granting in part Defendant's

motion to dismiss. Counts I through IV were dismissed in their entirety, and all allegations of fraud were stricken from Count V.

On June 8, 2004, Defendant filed a motion seeking leave to file an Answer to the Complaint *instanter*. The Court granted this motion on July 6, 2004. On July 14, 2004, Defendant filed its Answer and raised the affirmative defenses that it did not participate in any transactions involving Plaintiffs nor any transactions subject to coverage under the MCPA.

On July 7, 2005, Defendant filed the instant motion for summary judgment. Plaintiffs filed their response on August 8, 2005. Defendant filed its reply on September 2, 2005. The Court heard oral argument on the motion on September 21, 2005.

## ANALYSIS

### A.   Standard of Review

The Court reviews Plaintiffs' Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

3

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.      Application of the Michigan Consumer Protection Act ("MCPA")**

Defendant argues that the MCPA does not apply to Plaintiffs' claim because (1) Plaintiffs were citizens of New York, not Michigan, at the time they received the warranty and took delivery of the Winnebago, (2) they purchased and took delivery of the Winnebago in New York from a New York dealership, and (3) the two repair visits during the warranty period occurred in New York. Defendant cites five Supreme Court cases in support of the proposition that a state has no power to legislate beyond its borders: *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003); *BMW of North America v. Gore*, 517 U.S. 559, 572 (1996); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914); and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

In support of application of the MCPA, Plaintiffs recite the Sixth Circuit's definition of "residence" in *United States v. Namey*, which "requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently." 364 F.3d 843, 845 (6th Cir. 2004). Plaintiffs also argue that Michigan appellate courts have rejected the view that the MCPA applies only to Michigan residents, as evidenced by that court's opinion in *Nesbitt v. American Community Mutual Insurance Co.*, 236 Mich. App. 215, 228 (1999). "The language of the MCPA itself not only implies no exclusion of residents from other states, but instead implies its broad applicability." *Id.* Plaintiffs cite a Southern District of Indiana case that states that the "place of contracting is a relatively insignificant contact." *Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.*, 205 F.R.D. 503, 513 (S.D. Ind. 2001). Plaintiffs argue that the bulk of the repair attempts took place in Michigan after Plaintiffs had completed their move. Plaintiffs further argue that Michigan has a substantial relationship to the transaction in this case because Plaintiffs received, used, and sought service for their vehicle while residing in Michigan. They cite M.C.L. 600.715, which grants

Michigan courts jurisdiction over any corporation that transacts "any business within the state" or that causes "any act to be done, or consequences to occur, in the state resulting in an action for tort." It should be noted, however, that M.C.L. 600.715 is not relevant here because this is not a question of whether this Court has jurisdiction over Defendant.

The Court concurs with Plaintiffs. The Supreme Court case of *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) (stating that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred"), which Defendant relied upon in both its motion and reply, is not the situation with which we are presented.

Further, Defendant's use of *State Farm* on this issue is misplaced. The question is not whether Michigan can legislate conduct that occurred outside its borders, but whether Michigan's choice of law rules permit application of Michigan law to a contract formed out-of-state. This Court, in its exercise of supplemental jurisdiction, is bound to apply the law of the forum state (here, Michigan), including its choice of law rules. *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). As the Michigan Supreme Court has stated, "the rigid 'law of the place of contracting' approach has become outmoded in resolving contract conflicts." *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 124 (Mich. 1995). Rather, Michigan courts follow §§ 187-188 of the Restatement 2d Conflict of Laws, such that:

> [w]here, as here, a contract contains no express choice-of-law provision, Michigan courts apply the law of the forum state unless (1) there is no substantial relationship between the forum state and the contract or (2) the application of the forum state's law would conflict with a policy prerogative of a state with a greater interest in the contract than the forum state.

*NILAC Int'l Mktg. Group v. Ameritech Servs.*, 362 F.3d 354, 358 (6th Cir. 2004) (citing *Kipin Indus., Inc. v. Van Deilen Intern., Inc*., 182 F.3d 490, 493 (6th Cir. 1999) (explaining that Michigan courts

6

follow the choice-of-law rules of the Restatement (Second) of Conflict of Laws)).  Section 188(2) of the Restatement 2d lists the following factors as persuasive in deciding which forum's law should apply:

>  (1) the place of contracting,
>  (2) the place of negotiation of the contract,
>  (3) the place of performance,
>  (4) the location of the subject matter of the contract, and
>  (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Section 188(3) states, however, that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203." None of the exceptions appear to be applicable here.

Here, although the contract was entered into in New York, and two repairs took place in New York, the bulk of the problems with the Winnebago took place in Michigan.  In addition, Plaintiffs sought to have the vehicle repaired at least seventeen more times in Michigan, and, more importantly, Plaintiffs are currently residents of Michigan and have resided in the state during the majority of the time in which they owned the motor home.  Although there is some dispute as to Plaintiffs' residency at the time of the purchase, it appears that at least Mrs. Gernhardt had relocated to Michigan by the time this lawsuit was filed, and Mr. Gernhardt followed her shortly thereafter. Moreover, Defendant has pointed to no law that would conflict with the MCPA nor do they cite any policy interests that New York might have in this litigation.  The fact that the warranty repairs took place in New York is irrelevant under the MCPA, which is not so limiting.  However, the State of Michigan does have an interest in protecting its citizens from manufacturers who sell "lemons" to its residents, and, therefore, the Court finds that the MCPA applies to Plaintiffs' claim.

Finally, although the *Nesbitt* case cited by Plaintiffs is not directly on point, it is helpful in

deciding the applicability of the MCPA to Plaintiffs' claim. In *Nesbitt*, the court found that Michigan law applied to the transaction, despite the fact that the contract situs was Ohio. 236 Mich. App. at 227-28 (1999). The court of appeals found persuasive in its decision that defendant was a Michigan corporation and several relevant transactions took place in Michigan. *Id.* The court in *Nesbitt*, however, does not restrict its holding to defendants that are Michigan corporations. Rather, it states that "the language of the MCPA ... implies no exclusion of residents from other states, but instead implies broad applicability" and that the controversy "implicates the interests of this state sufficiently to bring the MCPA to bear." *Id.* at 228. Although being a Michigan corporation was certainly persuasive to the court, it does not appear that this factor was essential to the outcome. Therefore, based on the above discussion and the *Nesbitt* case, the Court holds that the MCPA is applicable to Plaintiffs' claim.

**C.     Independence of Plaintiffs' MCPA Claims from Previously Dismissed State Law Claims**

Plaintiffs argue that their MCPA claims are independent from their previously dismissed breach of implied and express warranty claims, and independent of any fraud claims (per the Court's Order dated December 30, 2003). They argue that Defendant's use of the term "warranty" in the title of a document that it contends is not really a warranty should be deemed a violation of M.C.L. 445.903(n). They further argue that Defendant's violated M.C.L. 445.903(y) defining the "failure to provide the benefits promised" as an unfair or deceptive practice. They contend that the "1999 New Vehicle Limited Warranty," whether deemed a warranty or a contract, promised a benefit of repairs at no charge within the stated time and mileage parameters, and thus they have raised a material question of fact as to whether they received the benefits promised by Defendant in the document. Defendant argues that Plaintiffs are still predicating their claim on the dismissed breach

of express and implied warranty claims, and they are therefore entitled to judgment as a matter of law on the remainder of Count V of Plaintiffs' complaint.

The Court agrees that the claims are identical. The thrust of their complaint is that the 1999 New Vehicle Limited Warranty did not live up to what it promised. Even if common law fraud is not implied in all MCPA claims, answering the question of whether Plaintiffs' received the benefit of the warranty is the same as asking whether there was a breach of the implied or express warranties. However, having been enlightened by decisions subsequent to its previous decision on this subject matter, as discussed below, this court now reverses its earlier ruling that privity is required to state a breach of implied warranty claim and holds that Plaintiffs' MCPA claim survives Defendant's motion for summary judgment.

**D.     Subject Matter Jurisdiction**

Because Plaintiffs' federal claims have been dismissed, and unless Plaintiffs amend their complaint following this ruling, the Court would have only supplemental jurisdiction over the remaining state law claim under the MCPA. Plaintiffs argue in their response to the instant motion that the Court should decline supplemental jurisdiction over their claims and remand them to Oakland County Circuit Court or enter a dismissal without prejudice.

28 U.S.C. § 1367(c)(3) provides, in pertinent part, that a district court may decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or "the district court has dismissed all claims over which it has original jurisdiction." The great weight of the most recent case law from the Eastern District of Michigan favors declining the exercise of supplemental jurisdiction. *See Golden v. Gorno Bros.*, 410 F.3d 879,

918 (6th Cir. 2005) (citing recent case law to support its decline of supplemental jurisdiction where all federal claims had been dismissed). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)); *see also Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("In fact, the usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment."); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (finding that only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial.").

Despite the above cited case law, "judicial economy, convenience, fairness, and comity," should be given due consideration when deciding whether to decline to exercise supplemental jurisdiction over the remaining state law claim. *Sachs v. City of Detroit*, 257 F. Supp. 2d 903, 916 (E.D. Mich. 2003).  Here, because Plaintiffs' claim has already been removed to federal court and has already proceeded through, according to Defendant,  two years of "extensive discovery and motion practice," the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

E.    **Leave to Amend Complaint based on Reexamination of December 30, 2003 Ruling on Breach of Implied Warranty Claims**

Plaintiffs have requested that this Court grant them leave to amend their complaint.  The

Court has liberal authority to allow Plaintiffs to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a), and leave should be "freely given when justice so requires." *Id.* Thus, Plaintiffs are granted leave to amend their complaint and reinstate only their breach of implied warranties claims dismissed on the basis of Plaintiffs' lack of privity with Winnebago. The Court's ruling dismissing Plaintiffs' claims based on the breach of express warranties shall remain undisturbed.

The Court has discretion to review its previous decisions. Under the law of the case doctrine, a district court may reexamine a prior finding in order to "prevent the continued litigation of settled issues," and "to assure compliance by inferior courts with the decisions of superior courts. *EEOC v. United Assoc. of Journeymen*, 235 F.3d 244, 249 (6th Cir. 2000) (finding that district court did not abuse its discretion in reconsidering a prior finding that the union had committed a pattern or practice of discrimination, and that the law of the case doctrine allowed it to reverse such prior finding) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). "[i]t is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Journeymen*, 235 F.3d at 249; *see also Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973) (noting that the reasons why the court should reexamine a prior decision "may include substantially different evidence raised on a subsequent trial; a subsequent contrary view of law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice) (citations omitted).

After taking into consideration recent case law decided after this Court issued its December 30, 2003 Order, the Court has decided to reverse its previous ruling and instead hold that vertical privity is not required to reach a remote manufacturer in a breach of implied warranty claim under

11

Michigan law.  This holding concurs with more recent opinions of other judges in this courthouse; *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642 (E.D. Mich. 2003); *Jellison v. Fleetwood*, Case No. 03-CV-71502 (E.D. Mich. Apr. 7, 2004).  In both cases, the district court judge analyzed Michigan case law over the course of the last four decades and ultimately concluded that Michigan courts would not require privity to pursue a breach of implied warranty claim against a remote manufacturer.  *See*, *e.g.*, *Michels*, 298 F. Supp. 2d at 650 (noting that a growing number of courts allow non-privity plaintiffs to recover for economic loss under an implied warranty theory (citation omitted)); 3 Anderson U.C.C. § 2-314:378 (December 2003) (concluding that "the modern trend is to abolish the requirement of privity of contract)); *Jellison,* Case No. 03-71502, at *22 (concluding that *Michels* correctly determined that "based on the Michigan Supreme Court precedent and the Michigan Court of Appeals' decision in *Cova v. Harley Davidson Motor Co.*, 26 Mich. App. 602 (1970), 'vertical privity no longer is required in Michigan to pursue a breach of implied warranty claim against a remote manufacturer.'") (citing *Michels*, 298 F. Supp. 2d at 650).  Therefore, Plaintiffs may amend their Complaint to include claims of breach of implied warranty.

Plaintiffs' request to amend their complaint to include a claim for breach of express warranty is denied.  It is not clear from Plaintiffs' response how the proposed amendment differs from Plaintiffs' original complaint, whose express warranty claims this Court previously dismissed.  Plaintiffs' suggestion that 15 U.S.C. § 2310(d) of the MMWA provides them with a private right of action is incorrect.  Section 2310 of the MMWA only concerns remedies once a valid claim is stated

under one of the other sections of the Act.  As stated in this Court's previous order, Plaintiffs do not have a viable express warranty claim under the MMWA. To the extent that Plaintiffs are requesting an amendment to force this Court to revisit its previous December 30, 2003 Order dismissing Plaintiffs' express warranty claims, that request is denied for the reasons laid out in the December 30, 2003 Order.

Finally, Plaintiffs have requested that the Court certify its December 30, 2003 order as an appealable final judgment.  Under Federal Rule of Civil Procedure 54(b), "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Because several of Plaintiffs claims have been reinstated as a result of the Court's reexamination of its previous ruling, the Court declines to certify the December 30 order.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.  The Plaintiffs must file their amended complaint within 20 days of the entry of this order.  Defendant has twenty days from the filing of the amended complaint to file an amended answer.

**SO ORDERED.**

                    s/Paul D. Borman  
                    PAUL D. BORMAN  
                    UNITED STATES DISTRICT JUDGE

Dated: October 12, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 12, 2005.

                    s/Jonie Parker  
                    Case Manager